# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# STATESBORO DIVISION

| | |
|---|---|
| VANDARREL LEON DOE, )<br>)<br>Movant, )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Respondent. ) | Case No. CV608-034<br>[underlying CR605-010] |

## REPORT AND RECOMMENDATION

Vandarrel Doe has moved to vacate, set aside, or correct his federal prison sentence under 28 U.S.C. § 2255. (Doc. 1.)[1] The government has responded in opposition to the motion. (Doc. 6.) For the following reasons, Doe's motion should be **DENIED**.

## I. BACKGROUND

On July 14, 2005, a federal grand jury, in a four-count superseding indictment, charged Doe with two counts of drug-related criminal activity. (Cr. Doc. 33.) Count 1 of the indictment charged Doe with conspiracy to

---

[1] Unless otherwise noted, citations are to the docket in movant's civil case, CV608-034. "Cr. Doc." refers to documents filed under movant's criminal case, CR605-010.

manufacture and distribute 50 grams or more of cocaine base ("crack") and to distribute a quantity of cocaine hydrochloride, and count 4 charged him with manufacturing 50 grams or more of crack cocaine. (Id.) Doe rejected a plea offer from the government and was convicted by a jury on both counts. (Cr. Doc. 102.) On April 25, 2006, the district judge sentenced Doe to life imprisonment and ten years' supervised release.[2] (Cr. Doc. 109.) Doe appealed on May 4, 2006. (Cr. Doc. 110.) On February 6, 2007, the Eleventh Circuit affirmed his conviction and sentence. United States v. Doe, 216 F. App'x 874 (11th Cir. 2007).

Doe is currently incarcerated at the United States Penitentiary in Coleman, Florida. (Doc.1 at 1.) His timely 28 U.S.C. § 2255 motion asserts that his counsel on trial and appeal, William Neville, was ineffective for:

(1) providing Doe with erroneous information regarding a proposed plea agreement with the government;

(2) failing to move for funds to hire a voice expert;

(3) failing to present an alibi defense and to produce alibi witnesses;

(4) failing to object to the government's classification of the cocaine base in exhibits one and two as crack cocaine;

---

[2] Doe was sentenced to life imprisonment under the "three-strikes" provision of 21 U.S.C. § 841(b)(1)(A).

(5) failing to move to suppress a coerced and suggestive pretrial identification;

(6) failing to object to Doe's sentence of life imprisonment as "greater than necessary;" and

(7) failing to order trial transcripts in their entirety.

(Doc. 1 at 4-10.) The government responded in opposition to Doe's motion on June 10, 2008. (Doc. 6.)

## II. ANALYSIS

Each of Doe's seven grounds for relief allege ineffective assistance of counsel. In <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984), the Supreme Court created a two-prong test for determining whether a movant received ineffective assistance of counsel. First, the movant must demonstrate that his attorney's performance was deficient, which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." <u>Id.</u> Second, the movant must demonstrate that the defective performance prejudiced the defense to such a degree that the results of the trial cannot be trusted. <u>Id.</u>

Under the performance prong, the reasonableness of an attorney's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. Id. at 690. The movant carries a heavy burden, as "reviewing courts must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the [movant] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689.

Under the prejudice prong, the movant must establish that there is a reasonable probability that the results would have been different but for counsel's deficient performance. Kimmelman v. Morrison, 477 U.S. 365, 375 (1986); Strickland, 466 U.S. at 696. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694; see also Lightbourne v. Dugger, 829 F.2d 1012, 1022 (11th Cir. 1987); Boykins v. Wainwright, 737 F.2d 1539, 1542 (11th Cir. 1983).

The Supreme Court has held that the same Strickland test applies to claims of ineffective assistance of appellate counsel. Murray v. Carrier, 477 U.S. 478, 488 (1986); Smith v. Murray, 477 U.S. 527, 535-36 (1986). In

4

Jones v. Barnes, 463 U.S. 745 (1983), however, the Court held that the Sixth Amendment does not require appellate advocates to raise every nonfrivolous issue. Effective appellate counsel should "'winnow out' weaker arguments even though the weaker arguments may be meritorious." Id. at 751-52.

Bearing these principles in mind, the Court will now address each of Doe's asserted grounds for relief.

### A. Counsel's Failure to Recommend that Doe Accept the Government's Plea Agreement

Doe contends that trial counsel provided him with erroneous information regarding the sentencing consequences of going to trial versus accepting the government's plea offer. (Doc. 2 at 6-10.) He avers that if he had been properly advised, he would have accepted the government's plea offer. (Id.)

The government presented Doe with a plea offer that would have dismissed count 1 of the superseding indictment if he agreed to plea guilty to count 4, which charged him with manufacturing crack cocaine in violation of 21 U.S.C. § 841(a)(1). (Doc. 2 at 7.) Counsel informed Doe that

he faced thirty years to life imprisonment if he accepted the plea offer.³ (Id.) Based upon counsel's assessment, Doe "made the decision to reject the government's [offer] and proceed to trial by jury." (Id.) But after independently researching the issue, Doe contends that the maximum penalty that he faced under the plea agreement was 15.6 years. (Doc. 1 at 5.) Consequently, he argues that he would have accepted the plea agreement but for counsel's erroneous advice. (Id.)

Doe arrived at the total of 15.6 years under the sentencing guidelines by assuming that his sentence would have been based upon a total of 145.8 grams of crack cocaine.⁴ (Doc. 2 at 7.) That would have placed his base

---

³ At the time of the plea negotiations, the government had not yet filed its 21 U.S.C. § 851 information. A § 851 information indicates the government's intention to rely upon prior convictions in order to increase a defendant's punishment level under certain criminal statutes. Although it is undisputed that Doe's criminal history reflected quite the laundry list of drug-related felonies, it appears that the government would have withheld reliance upon the prior felonies had Doe accepted the plea agreement. After he rejected the plea agreement, the government filed its § 851 information (Cr. Doc. 92), and Doe was subsequently sentenced to life imprisonment as a "three striker" under 21 U.S.C. § 841(a)(1) (Cr. Doc. 109).

⁴ According to the probation office's presentence investigation report ("PSI"), the total amount of crack cocaine attributable to Doe was actually 196.7 grams. (PSI 6 ¶ 15.) Doe appears to have relied upon the 145.8 figure based upon his mistaken belief that the sentencing judge could not take into account the 50.9 grams of cocaine charged under count 1 of the indictment, which the government would have moved to dismiss under the plea agreement. But the Eleventh Circuit has consistently held that "a district court may use extra-verdict enhancements . . . such as a drug quantity determination, to increase a defendant's base offense level" under the sentencing guidelines. United States v. Hickman, 125 F. App'x 322, 325 (11th Cir. 2006) (citing

offense level at 32, which he states would have been lowered to 29 for acceptance of responsibility.[5] (Id. at 8.) With a total offense level of 29 under the career offender provision (Category VI criminal history), he argues that his sentence would have been 151-188 months, or 15.6 years at the highest.[6] (Id.)

Doe qualified as a career offender, however, so his base offense level was automatically set at 37. U.S.S.G. § 4B1.1. At a total offense level of 37, a career offender's recommended sentence would be 360 months to life imprisonment, which is exactly as counsel advised. U.S.S.G. Sentencing

---

United States v. Rodriguez, 398 F.3d 1291, 1301 (11th Cir. 2005)). As long as the drug quantities listed in the PSI are supported by the preponderance of the evidence, the district judge is entitled to rely upon them in calculating a sentence. Rodriguez, 398 F.3d at 1296. Doe never contested the sufficiency of the evidence supporting the additional 50.9 grams attributed to him in the PSI. Consequently, the recommended sentence under the guidelines would have been based upon a total of 196.7 grams of crack cocaine. Hickman, 125 F. App'x at 325. Using the 196.7 gram figure, Doe's total criminal offense level would have been 34 under the sentencing guidelines. (PSI 6 ¶ 15.)

[5] Under the sentencing guidelines, any career offender sentenced under a statute with a statutory maximum punishment of life imprisonment is automatically assigned a criminal offense level of 37 if that is higher than the offense level otherwise applicable. U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 4B1.1(b). As discussed *infra*, Doe's base offense level would have been 37, not 32. However, that offense level is subject to a downward adjustment for acceptance of responsibility. Id.

[6] The maximum possible sentence actually would have been life imprisonment, which is the maximum sentence possible under the statute. See United States v. Booker, 543 U.S. 220, 264 (2005) (holding that the sentencing guidelines are advisory, so the sentencing judge may, in his discretion, sentence a defendant anywhere within the statutory range).

Table. As counsel properly calculated Doe's sentencing exposure, he cannot be said to have performed ineffectively under <u>Strickland</u>'s performance prong.[7] 466 U.S. at 689.

## B. Counsel's Failure to Request Funding for a Voice Expert

Doe rather imaginatively alleges that "the Government's entire case against [him] was predicated on a[] recorded conversation allegedly involving . . . and implicating him . . . in the drug conspiracy." (<u>Id.</u> at 11.)

---

[7] Even if counsel should have notified Doe of the possibility of a slightly lower sentence based upon a three point reduction for acceptance of responsibility, the defendant must show that the attorney's sentencing assessment was grossly inaccurate for the miscalculation to rise to the level of deficient performance. <u>Goudie v. United States</u>, 323 F. Supp. 2d 1320, 1330 (S.D. Fla. 2004) (citing <u>United States v. Day</u>, 969 F.2d 39, 43 (3d Cir. 1992)). There is no indication that Doe would have actually received a reduction for acceptance of responsibility. But if he had, his total offense level would have been 34, resulting in a minimum recommended sentence of 324 months. U.S.S.G. Sentencing Table. That translates to a minimum recommended sentence of 27 years' imprisonment, not the 30 years as advised by counsel. As noted above, the maximum possible sentence in either case would have been life imprisonment, which is the maximum sentence possible under the statute. <u>See</u> <u>Booker</u>, 543 U.S. at 264. Counsel's assessment was not grossly inaccurate; it was only slightly more than 10% higher than the actual recommended minimum sentence under the guidelines. Consequently, even if counsel should have calculated Doe's sentencing exposure based upon his acceptance of responsibility, Doe still has not shown deficient performance under <u>Strickland</u>.

Furthermore, Doe has not shown prejudice. To show prejudice in this context, a movant must show that there is a reasonable probability that despite counsel's errors he would have pled guilty and would not have insisted on going to trial. <u>Coulter v. Herring</u>, 60 F.3d 1499, 1504 (11th Cir. 1995). Although Doe states that he would have plead guilty to a 15.6-year term of imprisonment, he never alleges that he would have plead guilty to a 27-year term of imprisonment. Since he insisted upon a trial rather than expose himself to a minimum sentence of thirty years, it is not reasonably likely that he would have pled guilty when facing a 27-year term.

He contends that a voice expert's analysis of that conversation would have exonerated him.[8] (Id.) Consequently, he contends that his counsel was ineffective for failing to request funding to hire a voice expert. (Id.)

Doe's characterization of the evidence against him is grossly understated. Stuart John Greger, Doe's codefendant, was arrested on April 8, 2005 for selling crack cocaine to a confidential informant. (Trial Tr. 13.) Immediately after his arrest, Greger agreed to cooperate with the DEA by naming and helping to prosecute his affiliates in the drug trade. (Id. at 14.) Greger informed Agent Kent Munsey, the DEA task force agent working the case, that a man nicknamed "Black" manufactured his crack cocaine from the powder cocaine he regularly sold. (Id.) Doe later admitted at trial that he went by the nickname "Black." (Id. at 78.)

On the day of his arrest, Greger told Munsey that "Black" cooked all seven ounces of the crack cocaine Greger had sold to the confidential informant. (Id.) Agent Munsey had Greger call "Black" and recorded the

---

[8] Even if an expert testified that Doe was not the person on the other end of the telephone conversation, the jury was free to make its own comparison and to disregard the expert's evaluation. See, e.g., United States v. Guang, 511 F.3d 110, 120 (2d Cir. 2007). In other words, if the expert testified that it was not Doe in the recording, that testimony would have gone only to the weight of the evidence, not its admissibility. Id. Consequently, this hypothetical testimony would not necessarily have exonerated Doe.

conversation. (Id.) The telephone number that Greger dialed was a cellular telephone registered in Doe's name, and Doe's telephone records indicated that he was in regular contact with Greger. (Id. at 22-23.) During the conversation, Greger and "Black" discussed the recent drug transaction and made arrangements for a future transaction. (Id. at 18-20.) At trial, the jury heard this recorded conversation along with Doe's testimony. (Id. at 79-82).

On June 28, 2005, several months after Greger's arrest, the "Tri Circuit Drug Task Force" came into contact with Doe at a traffic stop and photographed him. (Id. at 20.) The picture was taken to Greger at the Emanuel County Sheriff's Department. (Id.) Greger positively identified Doe as "Black," his crack cocaine "cooker." (Id.) Greger also identified Doe at trial. (Id. at 32.)

In the face of such overwhelming evidence, counsel could have reasonably concluded that using a voice expert would further incriminate Doe, not exonerate him. Rather than calling a voice expert, counsel called both Doe and his fiancee to the stand, and both testified that the voice in the recording belonged to someone else. (Id. at 62, 81.) The Court is of the

opinion that counsel's decision to call Doe and his fiancee to the stand and to disregard Doe's request for a voice expert was sound trial strategy, and counsel therefore cannot be said to have performed deficiently under Strickland's first prong. 466 U.S. at 689.

### C. Counsel's Failure to Present an Alibi Defense or Subpoena Alibi Witnesses

Doe contends that he was in Florida visiting his son on April 8, 2005, the day Greger sold 145.8 grams of crack cocaine to the confidential informant and was subsequently arrested. (Doc. 2 at 14-17.) Accordingly, he avers that he could not have conspired with Greger to manufacture and distribute the crack cocaine. (Id. at 14.) Doe alleges that his fiancee, his mother, and his son's mother could have corroborated his alibi. (Id. at 16-17.) He thus argues that counsel was ineffective for failing to raise an alibi defense and subpoena his alibi witnesses.

Counsel discussed the possibility of raising an alibi defense with Doe's fiancee, Pamela Tigner. (Id. at 17.) He advised her that the use of such an alibi defense would have been more harmful than helpful. (Id.) He called her to the stand during the trial, but he did not question her about Doe's alibi. (Trial Tr. 53-63.) Accordingly, by Doe's own admission, counsel

explored the alibi defense and rejected it, so his decision appears to have been a strategic decision that would likely be protected under <u>Strickland</u>'s performance prong. Regardless, Doe cannot show prejudice on these facts. Doe's presence in Florida on April 8, 2005 by no means exonerates him, for the argument that his presence in Florida on that date somehow prevented him from answering his cellular phone to conspire with Greger from afar, or from manufacturing crack cocaine on an earlier date, is utterly preposterous. Consequently, even if the defense had been raised, there is simply no reasonable probability that the outcome of the trial would have been different. <u>Strickland</u>, 466 U.S. at 694-96.

### D. Failure to Object to the Government's Classification of Cocaine Base as "Crack"

Doe states that in his "vast experience and familiarity with crack and other forms of cocaine (in his past criminal activities), [he] noticed that exhibits 1&2 had none of the physical traits associated with 'crack cocaine', such as color or its rocklike form." (Doc. 2 at 18.) Consequently, he argues that he should have been sentenced under the more lenient powder cocaine provisions rather than the enhanced provisions for crack cocaine under the statute and sentencing guidelines. (<u>Id.</u>)

In support of his contention, he cites to United States v. Munoz-Realpe, 21 F.3d 375 (1994). In that opinion, a three judge panel of the Eleventh Circuit held that "cocaine base" under the sentencing guidelines and 21 U.S.C. § 952(a) refers only to crack cocaine in its "lumpy, rocklike form."[9] Id. at 377. Consequently, when cocaine base, though chemically distinct from powder cocaine, is not in a rocklike form, it should be treated as powder cocaine for sentencing purposes.[10] Id. At the time of Doe's trial, the cocaine offered into evidence appeared to have settled; it had separated into solid cocaine base and water. (Trial Tr. 11, 12; Doc. 2 at 18.) Accordingly, he argues that it should have been treated as powder cocaine under the sentencing guidelines.

In Munoz-Realpe, the defendant imported cocaine base in a liquid form to confound airport security. 21 F.3d at 377. In the present case, however, Agent Munsey testified that the cocaine was in a rocklike form at the time it was seized. (Trial Tr. 11, 12.) Munsey testified that in the time

---

[9] Doe was prosecuted under 21 U.S.C. § 841, but the same definition of cocaine base would applies in this instance. Berry v. United States, 2008 WL 2447154, at *1 (11th Cir. June 18, 2008).

[10] Doe does not dispute that the substance was chemically identical to crack cocaine, as opposed to powder cocaine.

between Doe's arrest and his trial, the cocaine separated from the water with the hard substance rising to the top. (Id. at 12.) Additionally, Greger explicitly stated that he had Doe manufacture the cocaine into solid crack wafers. (Id. at 36.) Doe does not contest either witness's testimony. Based upon the testimony adduced at trial, it is clear that the cocaine qualified as crack under the sentencing guidelines and statute. Consequently, Doe cannot show that counsel performed deficiently by failing to object at trial to the government's classification of the cocaine as crack. See Berry, 2008 WL 2447154 at *2 (counsel is not ineffective when the evidence adduced at trial shows that any challenge to the government's characterization of cocaine as crack would have failed).

### E. Counsel's Failure to Move to Suppress a Suggestive Pre-Trial Identification of Doe

After Greger was arrested, Agent Munsey showed him a photograph of Doe and asked him whether the man in the photograph was his crack manufacturer. (Trial Tr. 20.) Greger positively identified Doe as "Black," his crack cooker. (Id.) Doe alleges that counsel was ineffective for failing

to move to suppress the photographic identification as being impermissibly suggestive.[11] (Doc. 2 at 22.)

When challenging an identification procedure under the due process clause,[12] its admissibility is governed by the two-step analysis set forth in Dobbs v. Kemp, 790 F.2d 1499 (11th Cir. 1986). The Court must initially determine whether the original identification procedure was unduly suggestive. Cikora v. Dugger, 840 F.2d 893, 895-96 (11th Cir. 1988). If the procedure was not impermissibly suggestive, that ends the inquiry. Id. If the identification procedure was unduly suggestive, however, the Court must then assess whether, under the totality of the circumstances, the identification was nonetheless reliable. Id. at 895. In making this assessment, the Court must consider the five factors identified by the Supreme Court in Neil v. Biggers, 409 U.S. 188 (1972): (1) the witness's opportunity to view the defendant, (2) the witness's degree of attention, (3)

---

[11] Doe also asserts that the lineup was coerced, but he provides no facts in support of that claim. (Doc. 2 at 22.) Consequently, the claim is discarded as surplusage.

[12] The photographic identification occurred prior to the issuance of the complaint against Doe. (Cr. Doc. 1.) Consequently, Doe cannot challenge the identification as a violation of his right to counsel. Kirby v. Illinois, 406 U.S. 682, 689-90 (1977) (holding that the right to counsel only attaches after the commencement of criminal proceedings against a defendant).

the accuracy of the description, (4) the witness's level of certainty, and (5) the length of time between the crime and the identification. Id. at 199.

Even assuming that the identification was unduly suggestive, under the totality of the circumstances the identification was assuredly reliable. Id. Here, Doe and Greger were close associates. (Trial Tr. 38.) Consequently, Greger was regularly in Doe's presence, providing him many ample opportunities to view Doe. In fact, Doe admitted that he knew Gregor at trial. (Id. at 78.) No doubt, as regular acquaintances, Greger paid Doe a high "degree of attention." Furthermore, the level of certainty in the identification was near absolute. (Id. at 31-32, 38.) Though there is no indication that Greger provided the agents with a description of Doe before they presented him with the photograph, he did tell the agents that Doe used the nickname "Black." (Id. at 14.) Doe testified at trial that he regularly used that nickname. (Id. at 78.) As four of the five factors weigh *heavily* in favor of finding reliability, counsel cannot be said to have performed deficiently by failing to move to suppress the identification. Strickland, 466 U.S. at 690.

## F. Counsel's Failure to Object to the Sentence as being "Greater than Necessary"

Doe contends that counsel was ineffective for failing to object to the life sentence as being "greater than necessary." (Doc. 2 at 27.) Doe labors under the mistaken assumption that he was sentenced under the guidelines. (Id.) The statute he was charged with violating mandates life imprisonment for the manufacture or distribution of fifty grams or more of crack cocaine if the defendant has two or more felony drug convictions on his record. 21 U.S.C. § 841(a)(1). The district judge had no discretion to sentence Doe to anything other than life imprisonment, so counsel had no reason to raise an objection to the sentence on this ground. Card v. Dugger, 911 F.2d 1494, 1520 (11th Cir. 1990) ("Counsel cannot be labeled ineffective for failing to raise issues which have no merit."). Consequently, counsel's performance was in no way deficient for his failure to raise this objection. Strickland, 466 U.S. at 690.

## G. Counsel's Failure to Request Trial Transcripts in their Entirety

Doe finally contends that counsel was ineffective for waiving Doe's "right to a full transcript" for his appeal. (Doc. 2 at 28.) On May 19, 2006,

counsel ordered a transcript of all pre-trial, trial, and sentencing proceedings. (Cr. Doc. 112.) The transcript did not include the opening statements, closing arguments, or voir dire. (Doc. 2 at 29.) Doe contends that the missing portions of the transcript indicate that counsel was ineffective, so he moves the Court to stay these proceedings "until the missing transcripts can be furnished to [him] to determine whether counsel's ineffectiveness prejudiced [his] trial/appeal process." (Id.)

It appears that Doe is asking the Court to permit him more time and material to help him find fault with his counsel's performance. Doe, however, simply does not provide the Court with any basis to conclude that counsel was ineffective for failing to seek out these portions of the transcript, and "[t]he law does not require a federal habeas court to hear a claim based entirely on conclusory allegations wholly devoid of specifics." Jones v. Crosby, 2006 WL 890003, at *16 (M.D. Fla. Mar. 31, 2006) (citing Campell v. Wood, 18 F.3d 662, 679 (9th Cir. 1994)). Indeed, such conclusory allegations of ineffective assistance unsupported by any facts may be denied as meritless without holding an evidentiary hearing. See Lynn v. United States, 365 F.3d 1225, 1239 (11th Cir. 2004); United States

v. Jones, 614 F.2d 80, 82 (5th Cir. 1980). Furthermore, as noted above, counsel requested a transcript of all pretrial, trial, and sentencing proceedings. As he *did* request a full transcript of all proceedings, counsel cannot be said to have performed inadequately by "waiving" the full transcripts. Strickland, 466 U.S. at 690.

## III. CONCLUSION

Doe has failed to demonstrate that counsel was ineffective at trial or on direct appeal, so his § 2255 motion should be **DENIED**.

**SO REPORTED AND RECOMMENDED** this  9th  day of July, 2008.

*/s/ W. Smitt*
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA