# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# STATESBORO DIVISION

VANDARREL LEON DOE,     )
                                    )
      Movant,           )
                                    )
v.                         )     Case No.    CV608-034
                                    )                  [CR605-010]
UNITED STATES OF AMERICA, )
                                    )
      Respondent.     )

# <u>REPORT AND RECOMMENDATION</u>

This matter is before the Court on remand from the Eleventh Circuit. *Doe v. United States*, 329 F. App'x 228 (11th Cir. 2009). Vandarrel Leon Doe, currently serving two life sentences for conspiracy to manufacture and distribute cocaine base and actual manufacture of cocaine base, filed a 28 U.S.C. § 2255 motion contending that his trial counsel, William J. Neville, Jr., performed ineffectively by misadvising him regarding a plea agreement. (Doc. 1 at 4.[1]) For the reasons that follow, his motion should be **DENIED**.

---

[1] Unless otherwise noted, citations are to the docket in movant's civil case, CV608-034. "Cr. Doc." refers to documents filed under movant's criminal case, CR605-010.

# I.   BACKGROUND

On May 9, 2008, Doe submitted a § 2255 motion asserting several grounds for relief. (Doc. 1.) In ground 1, the only active claim at this point in the proceedings, he contended that his attorney was ineffective for misadvising him that if he accepted a government plea offer, he would face 360 months' to life imprisonment when he actually only faced 151 to 188 months' imprisonment. (*Id.* at 4.) The government attached a copy of a January 13, 2006 plea offer to its response. (Doc. 6 at 31-42.) Based upon that agreement, the Court reasoned that Neville properly calculated the sentencing range:

> The government presented Doe with a plea offer that would have dismissed count 1 of the superseding indictment if he agreed to plea guilty to count 4, which charged him with manufacturing crack cocaine in violation of 21 U.S.C. § 841(a)(1). (Doc. 2 at 7.) Counsel informed Doe that he faced thirty years to life imprisonment if he accepted the plea offer. (*Id.*) Based upon counsel's assessment, Doe "made the decision to reject the government's [offer] and proceed to trial by jury." (*Id.*) But after independently researching the issue, Doe contends that the maximum penalty that he faced under the plea agreement was 15.6 years. (Doc. 1 at 5.) Consequently, he argues that he would have accepted the plea agreement but for counsel's erroneous advice. (*Id.*)
>
> Doe arrived at the total of 15.6 years under the sentencing guidelines by assuming that his sentence would have been based upon a total of 145.8 grams of crack cocaine. (Doc. 2 at 7.) That would have placed

his base offense level at 32, which he states would have been lowered to 29 for acceptance of responsibility. (*Id.* at 8.) With a total offense level of 29 under the career offender provision (Category VI criminal history), he argues that his sentence would have been 151-188 months, or 15.6 years at the highest. (*Id.*)

Doe qualified as a career offender, however, so his base offense level was automatically set at 37. U.S.S.G. § 4B1.1. At a total offense level of 37, a career offender's recommended sentence would be 360 months to life imprisonment, which is exactly as counsel advised. U.S.S.G. Sentencing Table.

(Doc. 7 at 5-8 (footnotes omitted).) Hence, the Court reasoned that Doe failed to show that Neville rendered deficient performance under the attorney-ineffectiveness test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). (*Id.* at 19.)

It turns out, however, that there was a *second* plea offer. After the undersigned recommended by Report and Recommendation ("R&R") that the district judge deny Doe's claim, Doe

submitted a copy of the agreement to which he referred. This agreement demonstrated that, on January 25, 2006, the government proffered an agreement that stated that Doe would plead guilty to "manufacturing a quantity of cocaine," an offense that carried a statutory maximum term of 20 years' imprisonment, and the government would dismiss the remaining counts and not object to a 3-level reduction for acceptance of responsibility. The date on this agreement was a week later than that on the previous agreement submitted by the government, and both agreements bore the same Indictment Number of CR605-10.

*Doe*, 329 F. App'x at 230. The R&R was adopted without discussing the discrepancy in the agreements. (Doc. 10.) Thereafter, Doe filed a notice of appeal and sought a certificate of appealability. (Docs. 12 & 13.) By that time, the district judge noted the discrepancy and granted the certificate of appealability, explaining:

> Doe's argument has legs, as the plea agreement (which evidently was not in the record for the [magistrate judge] to review, [since] Doe just filed it) shows that the [government] agreed to 'not more than 20 years imprisonment' [and] Doe's attorney, says the [report and recommendation] 'informed Doe that he faced thirty years to life imprisonment if he accepted the plea offer.' And Doe is affirmatively contending that he would have accepted the deal. One thus would suppose this claim to have merit.[2]

(Doc. 19 at 3.) On appeal, the Eleventh Circuit vacated and remanded the case so that the Court could consider the effect of the January 25, 2006 plea agreement on Doe's ground 1 claim. *Doe*, 329 F. App'x at 231.

Upon receiving the mandate, the Court appointed counsel for Doe and scheduled a hearing on the matter. At that January 28, 2010 hearing, the Court heard testimony from Assistant United States Attorney Darrin McCullough, Doe, and Neville. (Doc. 41.)

---

[2] Doe was denied a certificate of appealability as to the remaining claims in his § 2255 motion. (Doc. 19 at 3.) Those claims are no longer in dispute.

### A.  McCullough

AUSA McCullough testified that he was the initial prosecutor in the matter.  (*Id.* at 11.)  He obtained an indictment against Doe that charged him with conspiring to manufacture and manufacturing cocaine base.  (*Id.* at 12.)  Under that indictment, Doe, a multiple felon, faced a maximum sentence of life without parole.  (*Id.*)  Doe was also "subject to an [21 U.S.C. §] 851 enhancement, which would have made life [imprisonment] mandatory."  (*Id.*)

McCullough made two plea offers.  The first was dated January 13, 2006. (*Id.* at 13.)  Under that proposed agreement, Doe still faced ten years to life, but McCullough stated that he would not have filed an § 851 enhancement, so a *mandatory* life sentence was not on the table.  (*Id.*) Doe rejected the offer.  (*Id.*)  Then, on January 25, 2006 McCullough offered a "sweetheart deal that came out of desperation based on an incredibly difficult trial schedule."  (*Id.* at 14.)  It allowed Doe to plead guilty to a "lesser included offense of Count 4, which would have been a penalty of not more than 20 years imprisonment."  (*Id.*)  Specifically, under 21 U.S.C. §

841(a)(1)(C), the term of imprisonment would have been no more than twenty years.

McCullough did not dispute that the United States Sentencing Guidelines, factoring in Doe's status as a career offender and his acceptance of responsibility, would have yielded a 151 to 188 month sentencing range under the second agreement. (Doc. 41 at 15.) Moreover, had the § 851 enhancement been applied, it would have raised the potential sentence to 30 years' imprisonment rather than imposing a mandatory life sentence.[3] (*Id.* at 19.) But McCullough stated that if Doe had accepted the plea offer, he would not have filed a § 851 information. (*Id.*) The sentencing enhancement "was never contemplated by anybody. The point was to get him to plead." (*Id.*) The plea agreement did not "say in here specifically that we wouldn't [seek the enhancement], but it is implicit in the . . .

---

[3] Section 851 establishes the proper procedures to follow for establishing a defendant's criminal convictions. 21 U.S.C. § 851. The actual penalty provisions come from 21 U.S.C. § 841. If a defendant is charged under § 841(a)(1) with distribution or manufacture of 50 grams or more of a mixture containing crack cocaine, the maximum penalty is life imprisonment. 21 U.S.C. § 841(b)(1)(A). If, however, a § 851 information is filed establishing "two or more prior convictions for a felony drug offense," "such person shall be sentenced to a mandatory term of life imprisonment." *Id.* Finally, if no drug quantity is charged, the punishment is governed by 21 U.S.C. § 841(b)(1)(C). Under that provision, the defendant faces a sentence of "not more than 20 years." But if an § 851 information is then filed, the maximum sentencing range is extended to 30 years, though a 30-year sentence is not mandatory. 21 U.S.C. § 841(b)(1)(C).

penalty.  If you look at the penalty provision, it says *not more than 20 years imprisonment*.  That would preclude by definition an 851 enhancement." (*Id.* at 15-16.)

Doe rejected the plea, and AUSA Karl Knoche, "who was going to try the case in [McCullough's] absence," then filed the § 851 enhancement. (*Id.* at 18.)

## B.    Doe

Doe testified that Neville approached him with a copy of the second plea offer in the late afternoon on January 30, 2006. (*Id.* at 28.) They spent about an hour going over the agreement.  Neville answered his questions about the plea agreement, and Doe read the agreement word for word. (*Id.* at 38.)  Too, Neville presented him with a letter explaining the sentencing range. (*Id.* at 29.)  The letter reads, in relevant part:

> Attached is a copy of the revised plea agreement which the Government offered since our last face-to-face meeting, the terms of which we have already discussed by comparing the changes made to the first offer.  It essentially provides for you to enter a guilty plea to Count Three of the indictment (which is erroneously shown as Count Four), Manufacturing Cocaine Base, as a lesser included offense of Count One, Conspiracy to Manufacture and Distribute Cocaine Base, and for the Government to recommend a sentence of 0 to 20 years.

Based upon our calculations using the Sentencing Guidelines, your realistic sentence would be to serve 15 years, 6 months, less your time already served which is now approaching 7 months. With credit for good behavior, you would only serve 85% of your sentence, which is just over 13 years, meaning you would be eligible for release about 12 years after entering the Federal Prison System from the Bulloch County Jail.

Because of your criminal history of three drug-related felony convictions, if you are found guilty of either of the two charges in the indictment you will be exposed to a mandatory sentence of life in prison without the possibility of parole. Conviction on both charges would guarantee it. As you pointed out during our last several visits, it's a huge dice roll to try your case rather than settle it by accepting a plea.

In short, by rejecting the plea agreement you would be giving up a sure 15+ year sentence in exchange for a shot at either acquittal or a mandatory life sentence without possibility of parole. Needless to say, the risk is great—especially considering the way juries in this part of the State tend to view drug-related cases. Of course, if your case is settled and concluded as per the proposed plea agreement, you will not subject yourself to a jury trial and the possibility of going to prison for the rest of your life. . . .

(Mov't Ex. 4.) At the bottom of the letter, Doe signed a prepared statement:

I have read and understand the recommendations in this letter, and I understand the terms of the plea agreement offered by the Government, as well as the time limitation for accepting or rejecting it. Furthermore, I have discussed all of my options with my attorney, and as of this time he has answered all of my questions. After giving due consideration to all factors, I hereby direct my attorney to REJECT the plea agreement and PROCEED TO a jury trial of my case.

(*Id.*)

On cross examination, Doe steadfastly insisted that even though he signed the letter and saw the plea agreement, which required the government to recommend a sentence of under 20 years, he believed that the maximum sentence was actually 30 years based upon Neville's advice. (Doc. 41 at 31.) According to Doe, Neville told him that he could receive a 30 year enhanced sentence and that "they was going to enhance me." (*Id.* at 38) Doe also insisted that had he been advised that the maximum sentence was 20 years, rather than 30 years, he would have accepted the agreement and would not have gone to trial. (*Id.*)

As the government demonstrated on cross-examination, Doe's last assertion (that he would have accepted the plea agreement) is unworthy of belief. McCullough testified that the government would not have accepted a plea pursuant to *North Carolina v. Alford*, 400 U.S. 25, 36 (1970) (permitting a defendant to enter a plea of guilty without admitting guilt in order to avoid a more serious sentence). (Doc. 41 at 20.) Hence, Doe would have had to acknowledge he committed the charged conduct in order to take advantage of the agreement. McCullough testified that "the ongoing

problem that Mr. Neville and I were lamenting throughout this process was that Mr. Neville told me repeatedly that Mr. Doe insisted he was factually innocent, that he was not guilty of the offense charge, and that he would proceed to trial." (*Id.* at 21.) Doe admitted as much at the § 2255 hearing (*id.* at 35), and when questioned about his guilt, he still hesitated to offer an admission. The following exchange took place between Doe and government counsel:

Q  Okay. Did you commit the offense that you would have had to pled to in the plea agreement?

A  Excuse me, sir?

Q  Did you commit the offense you would have had to pled to in the plea agreement?

A  I would [have] pleaded to it.

Q  Did you commit it?

A  I would [have] pleaded to it.

Q  Did you commit it?

A  I would [have] pleaded to it.

Q  Did you commit it?

**A** If he had gave me, for the due fact I know the percentage of convictions out of federal. Federal, their conviction rate. I would have plead[ed] to it.

**Q** You understood you likely would have been convicted. But my question is, did you commit it?

**A** I would have pled to it, sir.

**Q** Did you commit[] it?

**A** Yes, sir.

**Q** Excuse me?

**A** I'd pled to it, and I'd had to plea to it.

**Q** But my question is not whether you would have pled. My question is did you commit it?

**A** Yes, sir.

**Q** And you would have been able to stand up in front of the Court, take an oath, and say "Judge, I did this."

**A** Yes, sir.

**Q** Now, you testified at trial that you did not do it.

**A** Yes, sir.

**Q** You testified that in trial that all of in your past cases whenever you had actually done it, you went on and plead guilty.

**A** Yes, sir.

Q And in fact, your record shows a number of guilty pleas to drug offenses.

A Sir?

Q And you told the jury that every time in the past when you have done it, you plead guilty, but you hadn't done it this time so you weren't pleading.

A Yes, sir.

Q That wasn't true; was it?

A No, sir. I was doing 30 years, plead to 30 years.

Q You were looking at the penalty, so you perjured yourself at trial. Is that correct?

A I perjured myself.

Q Well, was it the truth that you told them? When you told them you didn't do it, was it the truth?

A No, sir.

Q Now are you telling us the truth here?

A Yes, sir.

(*Id.* at 32-34.)

## C.   Neville

Neville, an attorney on the verge of retirement, has been practicing law since 1977. (*Id.* at 40-41.) He conceded that federal criminal cases were

not the primary portion of his practice, but he had prosecuted misdemeanors and traffic cases in state court for 28 years. (*Id.*) When asked about the first plea offer, he stated that it "frankly, looked like under the guidelines, . . . [it] would have been a life sentence." (*Id.* at 42.) On the "eve of trial, we received another offer, which was a very favorable offer, I thought." (*Id.*) "[Doe] rejected that offer. We went to trial, and he was convicted on conspiracy and on the substantive count. And . . . under the statutory sentence, looking at his record, . . . he was given two life sentences." (*Id.*) Neville admitted that he discussed the potential of a § 851 enhancement during his discussion with Doe and that he "didn't know exactly what the result would be." (*Id.* at 43-45.) He also stated that he "discussed with [Doe] that the judge was not bound by an agreement that we would tender, and the judge might reject that plea." (*Id.* at 44.)

## II.   ANALYSIS

Doe has presented a moving target. In his initial filing, he contended that Neville advised him that he faced 30 years' *to life* imprisonment if he accepted the plea agreement when he actually only faced a maximum of 20 years. (Doc. 1 at 4; doc. 2 at 7.) As the case has progressed, he has stepped

13

back from that claim. In his objections to the initial R&R, he insisted that Neville advised him that he would serve 30 years' imprisonment if he accepted the plea, and he complained that that was "more than 50% higher than the recommended minimum sentence of 151 months." (Doc. 9 at 1, 3.) Then, at the § 2255 hearing Doe waffled again, at one point saying that Neville told him he "could" receive 30 years, but at another he agreed that his sentence "would" have been 30 years.[4] (Doc. 41 at 29, 30, 31.) Now serving two life sentences, Doe has nothing to lose by embellishing the truth -- indeed, at the § 2255 hearing he admitted that he lied at trial when he took the stand and denied guilt. In that regard, it is unsurprising that the severity of the alleged sentencing-advice error has changed so dramatically since he filed his initial motion. His memory appears to have evolved to track the legal dispute and facts adduced along the way.[5]        Neville, on

---

[4] The most recent shift was likely prompted by the Eleventh Circuits explanation that under the second plea agreement, Doe faced a *maximum* sentence of 30 years (not a mandatory 30-year sentence) if a § 851 enhancement was filed. *Doe*, 329 F. App'x at 231.

[5] At the hearing, government counsel summarized Doe's evolving argument: "He was, in his mind, according to his original petition, he was choosing between 15.5, the 20-year cap for the guidelines, and a life sentence. This business about the 30-year advice, that factoring into his choice, has only come up recently and only appears for the first time in this hearing." (Doc. 41 at 53.) "This 30-year business is a red herring and recent construction." (*Id.*)

the other hand, is a well-respected attorney who offered highly credible testimony during the § 2255 hearing. He presented Doe with an exemplary letter explaining Doe's sentencing exposure under the second agreement.[6] (Doc. 41 at 28.) And, he discussed with Doe the possibility of a § 851 enhancement. (*Id.* at 45.) Doe's counsel pointed Neville to the language in the statute and Neville admitted that Doe would have faced a maximum sentence of 30 years if enhanced, but Neville never testified that he conveyed to Doe that he faced 30 years if enhanced. (*Id.*) Instead, he merely advised Doe of the possibility of an enhancement but had not worked out its effect. (*Id.* at 43.) This construction fits with Neville's letter -- the best evidence of his advice -- since no such detailed explanation of the enhancement was included therein. The Court accepts this as true and discredits Doe's assertion that Neville gave him specific-sentencing range advice as to the enhancement. The question, then, is whether Neville's

---

[6] As the Court noted at the hearing, "Mr. Neville's letter just standing alone, looking at it without any other surrounding testimony here, would be a model that we could use at seminars for how to write and present a letter to a client telling him what the facts were and what the attorney's assessment of a plea offer would be, and what range would be from it. It is a well written letter." (Doc. 41 at 47-48.)

mere mention of the possibility of the enhancement amounted to ineffective assistance. Doe insists that it does.

Under *Strickland*'s two-part test for determining whether counsel performed effectively, Doe must first prove that Neville's advice was deficient, and he must then show that the deficient advice was prejudicial. 484 U.S. at 687. Under the first prong, Doe must demonstrate that Neville's sentencing-range assessment was grossly inaccurate for the miscalculation to rise to the level of deficient performance. *Goudie v. United States*, 323 F. Supp. 2d 1320, 1330 (S.D. Fla. 2004) (citing *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992)). Here, Neville's assessment in the letter was spot on accurate. The question, then, is whether his mention of the possibility of an enhancement was in error. Legally, it was not. According to the statute's terms, the government could file a § 851 information with the Court "before trial, or before entry of a plea of guilty."[7] 21 U.S.C. § 851(a)(1); *cf. United States v. Purcell*, 667 F. Supp. 2d 498, 511 n.15 (E.D. Pa. 2009) ("Had defendant indicated his intention to plead guilty to the Court before July 13, 2006, the government would

---

[7] Of course, Doe's signing of the plea agreement would have preceded the actual entry of the plea.

nevertheless have had an opportunity to file the § 851 Information prior to the entry of defendant's guilty plea at a change of plea hearing."). Hence, advising Doe that the government could still conceivably seek out a sentencing enhancement was in no way deficient. Moreover, while McCullough testified that he would not have sought out an enhancement had Doe accepted the plea, nothing in the record shows that Neville was actually aware that an enhancement would not be forthcoming. McCullough admitted that nothing in the agreement *explicitly* prevented the government from filing a § 851 information.[8] (Doc. 41 at 15-16.) Undoubtedly, it would have been better to have verified the matter with government counsel and negotiated for a term in the plea agreement, but Neville's advice was not deficient.

Turning to the second prong of the attorney ineffectiveness inquiry, Doe must show that there was a reasonable probability that the results would have been different but for counsel's deficient performance.

---

[8] Doe, relying upon McCullough's testimony, argues that the plea agreement *implicitly* precluded such an enhancement (doc. 46 at 2), but the Court finds the argument unpersuasive. The facts adduced at the hearing simply do not establish that Neville knew that the government would not have filed a § 851 information. And he still advised Doe that under his interpretation of the plea agreement that the government would not recommend a sentence in excess of 20 years. (Mov't Ex. 4 at 1.)

*Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *Strickland*, 466 U.S. at 696. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see also Lightbourne v. Dugger*, 829 F.2d 1012, 1022 (11th Cir. 1987); *Boykins v. Wainwright*, 737 F.2d 1539, 1542 (11th Cir. 1983). To meet the prejudice prong in this context, Doe must show that there is a reasonable probability that but for counsel's errors he would have pled guilty and would not have insisted on going to trial. *Scott v. United States*, 325 F. App'x 822, 824 (11th Cir. 2009); *Coulter v. Herring*, 60 F.3d 1499, 1504 (11th Cir. 1995).

Here, even if Neville's advice was deficient, Doe was not prejudiced. While he insists that he would have pled guilty had he been "properly" advised, his assertion is simply not credible.[9] Doe steadfastly maintained his innocence until his § 2255 hearing. (Doc. 41 at 32-34 (colloquy at § 2255 hearing discussed in § 1(b) above); cr. doc. 115 at 74-76 (transcript of jury trial; Doe insisted that he was innocent of the charges).) And he struggled

---

[9] For that matter, a ten-year swing in maximum sentences is simply not substantial when balanced against the possibility of a mandatory life sentence. Also, his recommended sentencing range would not have changed much under the enhanced sentence. If Doe's maximum possible sentence was 30 years, his base offense level would have been 34, rather than 32. U.S.S.G. § 4B1.1. Assuming a downward adjustment for acceptance of responsibility, his offense level would have been lowered to 31. He admits

with admitting guilt, even then. He tried to wriggle through the government's questions by insisting that he would have pled to the crime without admitting guilt, since he was familiar with the high federal "conviction rate." (Doc. 41 at 33.) The government, however, would not have accepted an *Alford* plea. After asking Doe *nine times* whether he had committed the offense, he finally admitted guilt and said that he had perjured himself at trial. (*Id.* at 33-34.) He also admitted that he had never given Neville any reason to believe that he had committed the offense. (*Id.* at 35-36.) Now incarcerated for life, Doe wants to go back in time and accept the better bargain. But his actions prior to trial and his near refusal to admit guilt even now persuade the Court that he would not have accepted the second plea offer or would have admitted guilt in a change of plea proceeding. He decided to "roll the dice" in hopes of an acquittal and lost. The Court thus rejects his claim that he would have accepted the government's offer. Hence, he can show no prejudice.

---

a criminal history category of VI. (Doc. 2 at 8.) Accordingly, his recommended sentencing range would have been 188-235 months -- still under 20 years.

Doe, however, insists that the "law of the case" doctrine prohibits this finding.[10] (Doc. 46 at 2-4.) He points to the government's § 2255 appellate brief, where it argued that Doe's assertion of innocence at trial absolutely barred him from showing prejudice. (*Id.*; doc. 46-1 at 23-24 (government's appellate brief).) The government argued that since he maintained his innocence, it was inconsistent for him to now claim that he would have pled guilty and he thus could not show that he was prejudiced. (Doc. 46-1 at 23-24.) "Given Doe's denial of guilt under oath, he could not have established a factual basis for a guilty plea to these charges."[11] (*Id.* at 22.) Doe contends that the Eleventh Circuit, by not discussing the matter when it granted his § 2255 appeal, implicitly rejected and thus has legally precluded a contrary factual finding. (Doc. 46 at 3; doc. 43 at 7.) Even assuming that

---

[10] Under the "law of the case" doctrine, district courts are bound by findings of fact and conclusions of law made by the court of appeals in an earlier appeal of the same case. *United States v. Stinson*, 97 F.3d 466, 469 (11th Cir. 1996).

[11] Other courts have found that argument persuasive:

The defendant must therefore show deficient performance and prejudice. This he cannot do. Defendant's claim that he wanted to plead guilty to both charges ignores the fact that he has consistently denied his knowledge of the firearm. He simply would not have been able to enter a guilty plea in light of this denial. His assertion that he would have done so evidences either a misunderstanding of what is required to enter a plea of guilty or an admission that he lied under oath at trial. And, in light of defendant's protestations of innocence, the court cannot say that no competent counsel would have taken count one to trial. *See Dingle v. Secretary for Dept. of Corrections*, 480 F.3d 1092, 1099 (11th Cir. 2007).

the Eleventh Circuit rejected a hard-and-fast rule that no prejudice can be shown where a defendant denies guilt at trial, it remanded the case so that this Court could determine whether Neville provided Doe with ineffective assistance. That necessarily includes a determination of whether Doe was prejudiced by any errant advice. The issue, therefore, is whether the Court credits Doe's assertion, not whether it was legally impossible for him to enter a plea of guilty. Doe has every reason to lie, and he has done so. Neville clearly informed Doe that he would be taking a substantial risk by rejecting the plea offer. Doe, aware of the consequences of rejecting the plea, chose to do so in hopes of obtaining an acquittal.

Based upon the record, the Court is not persuaded that Neville rendered deficient advice or that it is reasonably likely that Doe would have pled differently but for Neville's allegedly deficient advice. Hence, Doe's ineffectiveness claim against Neville fails.

## III. CONCLUSION

Doe has failed to demonstrate that counsel was ineffective, so his § 2255 motion should be **DENIED**. Moreover, applying the Certificate of

---

*United States v. Stanton*, 2008 WL 2074417 at *8 (N.D. Fla. May 14, 2008).

Appealability ("COA") standards, which are set forth in *Brown v. United States*, 2009 WL 307872 at * 1-2 (S.D. Ga. Feb. 9, 2009) (unpublished), the Court discerns no COA-worthy issues at this stage of the litigation, so no COA should issue. 28 U.S.C. § 2253(c)(1); *see Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (approving sua sponte denial of COA before movant filed a notice of appeal). And, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, in forma pauperis status on appeal should likewise be **DENIED**. 28 U.S.C. § 1915(a)(3).

    **SO REPORTED AND RECOMMENDED** this  12th  day of April, 2010.

                                                _____
                                                UNITED STATES MAGISTRATE JUDGE
                                                SOUTHERN DISTRICT of GEORGIA